IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WAYNE TATUM,                                *

     *Pro se* Plaintiff,                   *

     v.                                    *     Civil Action No.: RDB-06-2307

UNITED STATES OF AMERICA, *et al.*,       *

     Defendants.                           *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Wayne Tatum ("Tatum" or "Plaintiff"), proceeding in proper person, initiated this action seeking injunctive relief and declaratory relief from the United States of America, as well as Secretaries Robert M. Gates of the Department of Defense and Donald C. Winter of the Department of the Navy, in their respective official capacities (collectively, "the United States" or "Defendants").  Plaintiff requests the vacation of his prior courts-martial convictions, the expungement of his military records, and the reinstatement of certain military benefits.  Pending before this Court is Defendants' Motion to Dismiss or, *in the Alternative*, Motion for Summary Judgment.  The parties' submissions have been reviewed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2004).  For the reasons that follow, Defendants' Motion to Dismiss is GRANTED pursuant to Federal Rule of Civil Procedure 12(b)(1) for want of subject matter jurisdiction.

## BACKGROUND

From November 3, 1970 to December 2, 1993, Plaintiff Wayne Tatum was a member of the United States Marine Corps.  (Am. Compl. ¶¶ 8-9.)  On February 20, 1987, he re-enlisted in the Marine Corps and was assigned to Marine Aircraft Group 26, Second Marine Aircraft Wing

in Jacksonville, North Carolina.  (*Id.* ¶¶ 14-15.)

On December 15, 1989, court-martial charges were brought against Tatum.[1]  (Defs.'

Mem. Supp. Mot. Dismiss 3.)   In light of the ongoing court-martial proceedings, Tatum was not

discharged when his three year re-enlistment period ended on February 20, 1990.  (Am. Compl. ¶

15.)  On May 23 and July 17-21, 1990, a General Court-Martial acquitted Tatum of all the

charges against him except the failure to support his dependents in violation of Articles 132 and

134 of the Uniform Code of Military Justice, 10 U.S.C. §§ 932 and 934.[2]  (*Id.* ¶ 16.)  As a result

of this conviction, Tatum was sentenced to "a bad conduct discharge and ordered to forfeit

$500.00 monthly from his pay for four (4) months."  (*Id.* ¶ 17.)  In *U.S. v. Tatum*, 34 M.J. 1115

(1992), the United States (Navy-Marine) Court of Review, dismissed the guilty verdicts on these

counts and set aside Plaintiff's sentence.  (Am. Compl. ¶ 20.)

Meanwhile, two additional charges were brought against Tatum via court-martial on

December 27, 1991.  (Defs.' Mem. Supp. Mot. Dismiss 3-4.)  These charges alleged that

Plaintiff filed false travel reimbursement claims.  (Defs.' Mem. Supp. Mot. Dismiss Ex. D, at

1a.)  On April 27, 1992, the same day *U.S. v. Tatum* was decided, a General Court-Martial

convicted Plaintiff of these charges.  (Defs.' Mem. Supp. Mot. Dismiss 4.)  On November 18,

1992, after serving his sentence of four months confinement at hard labor, Tatum went on

---

[1]      He was accused of sexually and physically abusing a minor.  (*See* Defs.' Mem. Supp. Mot. Dismiss Ex. B.)

[2]      While neither of the parties submits that there were any concurrent non-military prosecutions against Tatum, this Court notes that the Board of Correction of Naval Records described a related criminal complaint that resulted in "a hung jury."  (Defs.' Mot. Dismiss Ex. I.)  In addition, the Board of Correction of Naval Records also noted that Plaintiff "later pled no contest to a fourth degree sexual offense. . . ."  *Id.*

appellate leave.  (Defs.' Mem. Supp. Mot. Dismiss Ex. I, at 1.)  However, he was later recalled

from this leave "after military authorities were advised [Plaintiff] had written bad checks in the

amount of about $1000."  (*Id.*)  Plaintiff did not return from his appellate leave as requested.

(*Id.*)  As a result, he was listed as "an unauthorized absentee" from July 6, 1993 to November 18,

1993.  (*Id.*)

On November 18, 1993, Tatum "requested execution of the bad conduct discharge."  (*Id.*

at 1-2.)  Accordingly, on December 2, 1993, he was dishonorably discharged from the Marine

Corps.  (Am. Compl. ¶ 9.)  Almost five years later, Tatum filed a petition on October 22, 1998

before the Board of Correction of Naval Records seeking to have his dishonorable discharge

recharacterized as an honorable discharge.  (Defs.' Mem. Supp. Mot. Dismiss 4 & Ex. I, at 2.)

On April 6, 1999, the Board of Correction of Naval Records rejected his petition.  (Defs.' Mem.

Supp. Mot. Dismiss Ex. I, at 1.)

Approximately six and a half years after his petition had been rejected, on September 5,

2005, Tatum filed the subject Complaint in this Court against the United States as well as

Former Defense Secretary Donald Rumsfeld and Former Secretary of the Navy Gordon R.

England acting in their respective official capacities.[3]  On October 23, 2006, Plaintiff amended

his Complaint without leave of this Court as a matter of course.  (Paper No. 8.)  Plaintiff's First

Amended Complaint contains a single prayer for relief asking that this Court order Declaratory

and Injunctive Relief.  Specifically, Tatum asks that this Court vacate and expunge his

convictions by courts-martial, restore his back-pay due and other benefits, and reimburse him for

---

[3]       On February 5, 2007, the caption was amended to reflect the new Secretary of
Defense, Robert M. Gates, and the new Secretary of the Navy, Donald C. Winter.  (*See* Paper
No. 22.)

attorney's fees and costs incurred in the instant action.  (Am. Compl. ¶ 85.)  On December 19,

2006, Defendants filed the subject Motion to Dismiss or, *in the Alternative*, Motion for Summary

Judgment, alleging that this Court lacks subject matter jurisdiction over Tatum's claims because

he did not exhaust his military remedies.[4]  (Paper No. 14.)

## STANDARD OF REVIEW

### I.      Motion to Dismiss

Defendants have moved to dismiss Plaintiff's Complaint for lack of subject matter

jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  As an initial

matter, "[t]he plaintiff has the burden of proving that subject matter jurisdiction exists." *Evans v.*

*B.F. Perkins Co.,* 166 F.3d 642, 647 (4th Cir. 1999); *see Richmond, Fredericksburg & Potomac*

*R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citations omitted).  Generally, when

reviewing a motion to dismiss where the jurisdictional allegations of the complaint are purported

to be defective, "the district court may regard the pleadings as mere evidence on the issue and

may consider evidence outside the pleadings without converting the proceeding to one for

summary judgment." *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004); *see also*

*Richmond, Fredericksburg & Potomac R. Co.,* 945 F.2d at 768.

Furthermore, "[u]nlike the procedure in a Rule 12(b)(6) motion where there is a

presumption reserving the truth finding role to the ultimate factfinder, the court in a Rule

12(b)(1) hearing weighs the evidence to determine its jurisdiction." *Adams,* 697 F.2d at 1219.

A 12(b)(1) motion should only be granted "if the material jurisdictional facts are not in dispute

---

[4]      Plaintiff filed a Motion for Summary Judgment on April 16, 2007.  (Paper No. 28.)  However, this Court grants Defendant's Motion to Dismiss on jurisdictional grounds. Consequently, Plaintiff's Motion for Summary Judgment will be DENIED.

and the moving party is entitled to prevail as a matter of law." *Moffet v. Computer Scis. Corp.*, 457 F. Supp. 2d 571, 578 (D. Md. 2006) (quoting *Richmond, Fredricksburg & Potomac R. Co.*, 945 F.2d at 768).

## DISCUSSION

The United States contends that this Court lacks subject matter jurisdiction over Tatum's claims because he has failed to exhaust the administrative remedies available to him in the military justice system.  Plaintiff responds that "[his] case concerns the fundamental question of whether the U.S. Marine Corps has continuing jurisdiction over [him] to subject him to a subsequent court-martial.  Resolution of this jurisdictional question . . . is within an Article III court's jurisdiction."  (Am. Compl. ¶ 29.)

By necessity, "[m]ilitary law . . . is a jurisprudence which exists separate and apart from the law which governs in our federal judicial establishment."  *Parker v. Levy*, 417 U.S. 733, 744 (1974); *see also Burns v. Wilson*, 346 U.S. 137, 140 (1953).  This separation is due to not only differences in the nature of military service and civilian life, but also the structure of the United States Constitution.  "Congress is empowered under Art. I, § 8, to make Rules for the Government and Regulation of the land and naval Forces. . . . Congress [has not] conferred on any Art. III court jurisdiction directly to review court-martial determinations."  *Schlesinger v. Councilman*, 420 U.S. 738, 746 (1975) (citing *Noyd v. Bond*, 395 U.S. 683, 694 (1969); *Ex parte Vallandingham*, 68 U.S. (1 Wall.) 243, 249-53 (1864)).  However, federal courts have long allowed for collateral attacks on the jurisdictional grounds or illegality of courts-martial.[5]  *See id.*

_____

[5]      *See generally* Joseph W. Bishop, Jr., *Civilian Judges and Military Justice: Collateral Review of Court-Martial Convictions*, 61 COLUM. L. REV. 40, (1961) (criticizing dictum in *Ex parte Milligan* that "the power of Congress in the government of the land and naval

at 746-47; *Dynes v. Hoover*, 61 U.S. (20 How.) 65 (1857); *Wise v. Withers*, 7 U.S. (3 Cranch) 331 (1806).

The mere fact that a defendant in a court-martial may collaterally attack the legality of the court-martial, does not mean that this Court will have subject matter jurisdiction over the relief sought in that collateral attack. *See Councilman*, 420 U.S. at 752-53. In *Williams v. Wilson*, 762 F.2d 357, 359 (4th Cir. 1985), the United States Court of Appeals for the Fourth Circuit adopted the framework for determining when a federal court should review a military decision that was first promulgated in *Mindes v. Seaman*, 453 F.2d 197, 201-02 (5th Cir. 1971).[6] This test consists of two threshold requirements and a four-part balancing test. "First, there must be an 'allegation of the deprivation of a constitutional right, or an allegation that the military has acted in violations of applicable statutes or its own regulations.'" *Guerra v. Scruggs*, 942 F.2d 270, 276 (4th Cir. 1991) (quoting *Mindes*, 453 F.2d at 201). "Second, the plaintiff must have exhausted the 'available intraservice corrective measures.'" *Id.* (quoting *Mindes*, 453 F.2d at 201) ). If these two initial requirements are met, the Court then proceeds to a four-part balancing test. The four elements of this test include:

> 1. The nature and strength of the plaintiff's challenge to the military determination. . . .
> 2. The potential injury to the plaintiff if review is refused.
> 3. The type and degree of anticipated interference with the military

---

forces . . . is not at all affected by the fifth or any other amendment" 71 U.S. (4 Wall.) 2, 138 (1867) (Chase, J. concurring)).

[6] There is some confusion in other federal courts of appeal about the continuing viability of *Mindes* in light of *United States v. Stanley*, 483 U.S. 669, 683 (1987). *See, e.g.*, *Wright v. Park*, 5 F.3d 586, 590-91 (1st Cir. 1993). However, four years after the issuance of the *Stanley* decision, the United States Court of Appeals for the Fourth Circuit reaffirmed its reliance on the *Mindes* test in *Guerra v. Scruggs*, 942 F.2d 270, 275-76 (4th Cir. 1991).

> function.  Interference per se is insufficient since there will always be
> some interference when review is granted, but if the interference
> would be such as to seriously impede the military in the performance
> of vital duties, it militates strongly against relief.
> 4.  The extent to which the exercise of military expertise or discretion
> is involved.  Courts should defer to the superior knowledge and
> expertise of professionals in matters such as promotions or orders
> directly related to specific military functions.

*Id*. (quoting *Mindes*, 453 F.2d at 201-02) (quotation marks omitted).

In the case at bar, Tatum has satisfied the first of the two threshold requirements of the

*Mindes* test, because he claims that he was wrongfully court-martialed and discharged in

violation of his Fifth and Eighth Amendment rights.  However, as to the second threshold

requirement, this Court must analyze whether he has exhausted his administrative remedies

within a reasonable time period.  The fact that Tatum couches his claims in constitutional terms

is of no moment in this Court's analysis of whether he exhausted those administrative remedies.

*See Nationsbank Corp. v. Herman*, 174 F.3d 424, 429 (4th Cir. 1999) (noting that the Court of

Appeals' "consistent and unambiguous line of cases rejecting the contention that constitutional

claims should be exempt from the exhaustion requirements"); *Am. Fed'n of Gov't Employees v.*

*Nimmo*, 711 F.2d 28, 31 (4th Cir. 1983) (holding that "exhaustion is particularly appropriate

when the administrative remedy may eliminate the necessity of deciding constitutional

questions.").  In addition, the inability of an administrative board or court to grant a plaintiff full

relief is not dispositive on the issue of exhaustion.  *See Guerra*, 942 F.3d at 277 (citing *Sanders*

*v. McCrady*, 537 F.2d 1199, 1201 (4th Cir. 1976)).

The undisputed facts in this case are that Tatum waited five years after being

dishonorably discharged before filing a petition before the Board of Correction of Naval Records

to recharacterize his discharge.  Within six months of the filing of that petition, the Board of

Correction of Naval Records rejected his petition.  Tatum then waited another six and a half

years before filing the subject Complaint in this Court.  Considerations of efficiency and agency

expertise in military courts weigh heavily against Tatum as a result of an eleven-year delay in

seeking to address the ramifications of his dishonorable discharge.  Tatum did not seek to resolve

his status in a timely manner, nor did he seek to resolve his status through the United States

Court of Appeals for the Armed Forces.  *See Thompson v. United States*, 60 M.J. 880, 883 (N-M.

Ct. Crim. App. 2005) (allowing for the use of a writ of *coram nobis* to set aside an earlier

conviction by court-martial).  As he failed to exhaust his administrative remedies, he has not

satisfied the threshold requirement for this Court's review of a military decision as clearly set

forth by the United States Court of Appeals for the Fourth Circuit in *Williams*, 762 F.2d at 359.

Accordingly, this Court lacks subject matter jurisdiction and the motion of the Defendants to

dismiss shall be GRANTED pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

As the Plaintiff is proceeding in proper person, this Court alternatively notes that even if

he had been able to meet the threshold exhaustion requirement, he does not satisfy the four-part

test set forth in the *Mindes* opinion.  As to the first factor—the nature and strength of the

claims—Tatum invokes both the Fifth and Eighth Amendments.[7]

Plaintiff's allegation that his Fifth Amendment rights were violated is a weak claim,

because he cannot show that he had a valid property or liberty interest or that he was ultimately

deprived of that interest without due process.  "Procedural due process imposes constraints on

---

[7]        The Fifth Amendment to the United States Constitution provides, in relevant part,
that "[n]o person shall . . .  be deprived of life, liberty, or property, without due process of law. . .
."  U.S. Const. amend. V.  The Eighth Amendment provides that "[e]xcessive bail shall not be
required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const.
amend. VIII.

governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Therefore, in order to have a significant challenge to the military's determination of his case, Tatum must show a violation of a liberty or property interest. Property interests "are defined by existing rules or understandings that stem from an independent source such as state law - rules or understandings that secure certain benefits that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). In *Guerra*, the United States Court of Appeals for the Fourth Circuit has held that the plaintiff did not have a property interest in his position in the Army, because the armed forces have discretion to discharge enlisted personnel pursuant to 10 U.S.C. § 1169.[8] 942 F.2d at 278 (citing *Rich v. Sec'y of the Army*, 735 F.2d 1220, 1226 (10th Cir. 1984)). The fact that the Secretary of the Navy retained the discretion to proscribe procedures for discharging Tatum vitiates any claim to a property right he had in his enlisted status and benefits. The Fourth Circuit also held in *Guerra* that even an enlisted individual had a property interest in his position at one time, it would not exist once the term of enlistment expired. *Id*. Thus, Tatum has not shown the deprivation of a property interest.

Just as he does not have a *property* interest protected by the Fifth Amendment, Tatum does not have a *liberty* interest protected by the Fifth Amendment. "Liberty" includes "the right of the individual to contract, to engage in any of the common occupations of life, to acquire

---

[8]     10 U.S.C. § 1169 provides: "No regular enlisted member of an armed force may be discharged before his term of service expires, except - (1) as prescribed by the Secretary concerned; (2) by sentence of a general or special court-martial; or (3) as otherwise provided by law."

useful knowledge . . . and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men.'" *Roth*, 408 U.S. at 572 (quoting *Meyer v. Neb.*, 262 U.S. 390, 399 (1923)).  While an individual holds a right to a good name in the abstract, "a critical element of a claimed invasion of a reputational liberty interest . . . is the falsity of the government's asserted basis for the employment decision at issue." *Guerra*, 942 F.2d at 278 (citation omitted).  Here, Tatum has failed to show that the stated reason for his dismissal—his conviction by court-martial—is untrue, despite ample opportunity to make such a showing at his court-martial proceeding.  As a result, he has not been deprived of a liberty interest.  Accordingly, Tatum has not brought a serious challenge to the prior military proceedings against him on Fifth Amendment grounds.

Likewise, Tatum has not made a significant challenge pursuant to the Eighth Amendment.  There is simply no disproportionate punishment present.  Neither of the parties argues that four months' incarceration and a dishonorable discharge are cruel or unusual punishments for being found guilty of essentially defrauding the military, to which Tatum swore an oath of allegiance.  As a result, Plaintiff has not made out a significant collateral challenge to his prior military proceeding, and the first factor in the *Mindes* balancing test—the nature and strength of Tatum's challenges to the Marine Corps' decision—weighs in favor of this Court not granting him relief.

With respect to the second factor in the *Mindes* balancing test, there is simply no on-going injury to a plaintiff who waits six and a half years before filing an action in this Court.  While his previous loss of back pay and military benefits may have constituted specific injuries, he has waived his rights.  Thus, the second factor also disfavors Tatum.

-10-

The third *Mindes* factor is the type and degree of anticipated interference with the

military function.  In *Chappell v. Wallace*, the Supreme Court explained the need for discipline

and duty as follows:

> The inescapable demands of military discipline and obedience to order cannot be
> taught on battlefields; the habit of immediate compliance with military procedures
> and orders must be virtually reflex[ive] with no time for debate or reflection. . . . This
> becomes imperative in combat; for that reason, centuries of experience has [sic]
> developed a hierarchical structure of discipline and obedience to command, unique
> in its application to the military establishment and wholly different from civilian
> patterns.  Civilian courts must, at the very least, hesitate long before entertaining a
> suit which asks the court to tamper with the established relationship between military
> personnel and their superior officers; that relationship is at the heart of the
> necessarily unique structure of the military establishment.

462 U.S. 296, 300 (1983); *accord Horn v. Schlesinger*, 514 F.2d 549, 553 (8th Cir. 1975) (noting

that in challenges to military retention and promotion, federal courts "are in an area involving

judgments as to military character, a field foreign to [federal courts'] normal competence").  This

traditional trepidation to review decisions of a uniquely military character is clearly applicable to

the matter before this Court.  It is not the function of this Court to interfere with the established

relationship between military personnel and their officers and conduct a review eleven and a half

years after the fact.  As a result, the Plaintiff could not satisfy the third factor in the *Mindes*

balancing test.

The final *Mindes* factor is the extent to which military expertise and discretion were

involved in Tatum's discharge.  Tatum's submissions to this Court make it clear that he is calling

for the use of military discretion in this case.  He cites a number of cases tried by military courts

to establish the proposition that the military should be compelled by this Court to use its

discretionary ability to reclassify the nature of his discharge.  Simply put, the nature of his

request and much of the law cited to support it shows that this decision falls squarely within the

discretion of the military and is not a process into which federal courts should interject themselves.  Therefore, the fourth *Mindes* factor weighs against this Court granting Tatum any relief.

Accordingly, Plaintiff has failed to meet the jurisdictional requirements to challenge his discharge from the Marine Corps in this Court.

## CONCLUSION

For the reasons stated above, the Plaintiff's failure to exhaust his administrative remedies in a timely manner precludes this Court's exercise of jurisdiction over his claims, and the Motion to Dismiss shall be GRANTED.  Furthermore, the *pro se* Plaintiff could not satisfy the criteria for this Court's jurisdiction even if he had exhausted the available administrative remedies.  A separate Order follows.

/s/ _____
Richard D. Bennett
United States District Judge

Dated: August 7, 2007